COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|                              | §  |                        |
| ---------------------------- | -- | ---------------------- |
|                              | §  | No. 08-10-00182-CV     |
| IN THE INTEREST OF:          | §  | Appeal from            |
|                              | §  |                        |
| JONATHAN RAY VELEZ-URESTI,   | §  | 288th District Court   |
|                              | §  |                        |
| A CHILD.                     | §  | of Bexar County, Texas |
|                              | §  | (TC # 1995-CI-13445)   |
|                              | §  |                        |

**O P I N I O N**

Alan Uresti, appearing *pro se*, appeals from an order dismissing his motion to modify conservatorship for want of prosecution. As he frames the issue, "[t]his cause on appeal . . . involves a 15-year long battle for custody. . . ." For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On November 6, 1995, the trial court entered a decree of paternity establishing that Uresti is the father of Jonathan Ray Velez-Uresti. The court entered orders appointing the child's parents as temporary joint managing conservators. In 2009, Uresti filed a motion to modify seeking to be named sole managing conservator. On September 22, 2009, the trial court denied Uresti's request but entered additional temporary orders which established a progressive visitation schedule. Uresti subsequently filed a motion to modify the temporary orders seeking a standard possession order and a separate motion to modify child support. On March 25, 2010, the trial court sustained a contest to Uresti's affidavit of inability to pay costs and ordered him to pay all filing fees and service costs within twenty days of the date of the order. The court set Uresti's motion to modify for jury trial on May 17, 2010, but Uresti did not appear. The trial

court dismissed the case because Uresti failed to appear and because he had failed to pay fees and costs as previously ordered. This appeal followed.

**APPELLATE JURISDICTION**

Uresti raises 54 issues on appeal. Issues 1-4 relate to a December 27, 2006 order finding Uresti in contempt and reducing child support arrearages to judgment. A contempt order is not reviewable by appeal. *Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985); *Hernandez v. Hernandez*, 318 S.W.3d 464, 467 n.1 (Tex.App.--El Paso 2010, no pet.). Contempt orders may only be reviewed by an application for a writ of habeas corpus, if the contemnor has been confined, or by a petition for a writ of mandamus, if the contemnor has not been confined. *See Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex. 1995); *Ex parte Williams*, 690 S.W.2d 243, 243 (Tex. 1985). To the extent Uresti is raising an issue related to the 2006 arrearage judgment, his notice of appeal was untimely as he did not file it until June 4, 2010. *See* TEX.R.APP.P. 26.1. For these reasons, we do not have jurisdiction to review his first four issues.

In Issues 5-8, Issues 13-15, Issues 17-33, Issues 35-44, and Issues 46-49, Uresti raises arguments related to sequential temporary orders, interlocutory rulings on multiple motions to recuse filed by him against a laundry list of jurists,[1] a motion to compel discovery, alleged ex parte communications, and alleged judicial conspiracies designed to violate his due process rights under the 14th Amendment of the United States Constitution. An appeal generally may be taken only from a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Appeals of interlocutory orders are appealable only when authorized by statute. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992); *see, e.g.*, TEX.CIV.PRAC.&REM.CODE ANN. § 51.014 (West 2008). It matters not whether constitutional complaints are lodged against these

---

[1] Motions to recuse were filed against Judges Janet Littlejohn, Michael Peden, Larry Noll, Barbara Nellermie, Renee McElhaney, David Peeples, David Berchelmann, Sol Casseb III, and Antonio Arteaga.

pre-trial determinations. In a suit to modify support or conservatorship under the Texas Family Code, a modification order is final and appealable. See *Bilyeu v. Bilyeu*, 86 S.W.3d 278, 282 (Tex.App.--Austin 2002, no pet.). The trial court has not entered a modification order because it has dismissed the suit. There is no statutory authorization to review the interlocutory rulings of which Uresti complains on appeal. Because we lack jurisdiction, we overrule Issues 5-8, Issues 13-15, Issues 17-33, Issues 35-44, and Issues 46-49.

## DENIAL OF INDIGENCY

Issues 9-12, Issue 16, Issues 45-46, and Issues 50-51 involve the trial court's denial of Uresti's indigence status. We recognize the litany of unpublished opinions articulating the proposition that an order sustaining a contest to an affidavit of indigence is interlocutory and not appealable. We may review an order sustaining a contest only when it is made as part of a pending appeal from a final judgment or other appealable order. TEX.R.APP.P. 20.1; *In re Arroyo*, 988 S.W.2d 737, 738-39 (Tex. 1998). Because Uresti's modification proceeding was dismissed for his failure to pay court costs, his complaints arise directly from the dismissal order and are ripe for appellate review.

On February 13, 2010, Uresti filed an affidavit of inability to pay court costs. We cannot determine how many pages were incorporated into the affidavit, nor can we ascertain whether it was properly executed, because only the first page appears in the clerk's record. Uresti alleged that he was unemployed, without sufficient funds to pay court costs, owned no real estate, stocks, bonds, life insurance policies, or other property. He was unable to borrow the money and had no other sources of income. A contest was filed by Dinah Gaines, a staff attorney for the Bexar County Civil District Courts. The contest stated:

The District Judge Presiding, on behalf of the Judges and the other officers[2] which are entitled or may be entitled to fees or costs of Court, movant in the above entitled and numbered cause hereby contests the Affidavit of Inability to Pay Costs filed by ALAN URESTI herein, and moves the court to require ALAN URESTI to give good and ample security to cover costs of this action.

Rule 145 governs affidavits of indigence. TEX.R.CIV.P. 145. Subsections (c) and (d) provide that the defendant or the clerk may contest an affidavit that is not accompanied by an IOLTA[3] certificate which explains that the party is represented by an attorney who is providing free legal services without contingency because of the party's indigence and the attorney is providing services either directly or by referral from a program funded by the IOLTA program. Because Uresti averred that he was not being assisted in any way by an attorney, the IOLTA prohibition against contests does not apply.

A hearing on the motion was conducted on March 25, 2010. Gaines announced that she represented the county and that she had filed a contest to the affidavit on behalf of the district clerk's office and anybody interested in court costs. Uresti did not challenge her announcement or otherwise complain that the contest had been filed on behalf of the judges rather than the district clerk.

Uresti then offered his own evidence to the court:

Let the record show that Exhibit 1 of my amended affidavit[4] of inability clearly shows that I am receiving government entitlement, therefore the contest is moot.

---

[2] One might infer that "other officers" entitled to payment of costs includes the district clerk, who is an elected official. While we do not proclaim to be well versed in the common practices of the district clerk's office or the Bexar County Council of Judges, we do recommend that the language of standard contests be revisited.

[3] IOLTA is the acronym for Interest on Lawyers Trust Accounts.

[4] Neither the amended affidavit nor the exhibit is contained in the clerk's record. Apparently, it was not offered as an exhibit during the hearing. Nevertheless, all parties and the court clearly were addressing the amended affidavit. Both the Texas Supreme Court and the San Antonio Court of Appeals, from which this case was transferred, have determined that affidavits of indigence may be amended. *In re J. W.*, 52 S.W.3d 730, 732 (Tex. 2001); *American Comm. Telecomm., Inc. v. Commerce North Bank*, 660 S.W.2d 570, 571 (Tex.App.–San Antonio 1983, order).

. . .

> That means a party receiving governmental entitlement based on indigency shall not be required to pay court costs. . . . The Court must comply with the Texas statutes and the Texas Rules of Civil Procedure Rule 145, otherwise the Court is violating my civil rights under Federal Chapter 42, Section 1983 and denying me my rights to due process, equal rights, and its abuse of discretion would be based on sexual discrimination pertaining to one rules [sic] for attorney and mothers and another discriminating rules [sic] for pro se fathers.

Gaines then responded that the amended affidavit did not affirmatively state that Uresti was receiving food stamps. Instead, "[h]e states *I will be applying for* government assistance in the form of Medicaid and food stamps because of my indigent state of life." [Emphasis added]. She also challenged that the exhibit was not incorporated into the affidavit, was not sworn to, and was not proper evidence of indigence. Uresti offered no further evidence and Gaines began cross-examination. Uresti testified that he lived with his mother on McCauley street and denied owning any property on Menefee Boulevard. He admitted inheriting the Menefee property from his father. The will and Order Admitting Will to Probate as Muniment of Title were admitted into evidence without objection. Uresti testified that his current driver's license reflected his address as McCauley but admitted that the former license which had expired July 31, 2009, reflected the Menefee property as his home address. When asked, Uresti claimed he had no idea who resided at 1634 Menefee or whether anyone was living there at all. He admitted selling the home to "Tony something or other." He did not recall the name, the date of sale, or the sales price.

Q: Now, Mr. Uresti, who pays the property taxes on 1634 Menefee?

A. I don't know, whoever. I guess Tony.

Q: And is Tony related to you?

A: No, he is not.

Q: Who is John Anthony Romo?

A: I have no idea.

Gaines then introduced a child support order entered on July 28, 2009, which indicated Uresti's address as 1634 Menefee.

Uresti later testified that he was not disabled, attended school part-time, had previously worked in construction, but was not currently employed. The previous year he had earned $8,000. He was looking for a job but had only begun exploring employment opportunities two weeks prior. He continued to deny ownership of the Menefee property even after the court admitted a release and waiver of vendor's lien executed by Uresti's mother as lienholder which recited that, "[t]he Lienholder acknowledges that the aforementioned property was deeded to Alan Uresti through the Will and Last Testament of Albert Rene Uresti and this Release and Waiver of Vendor's Lien also applies to Alan Uresti who has completed payment of the . . . Note of even date in the principal amount of $15,000 . . . ." The trial court then struck the affidavit of inability and ordered Uresti pay the court costs of $612 before proceeding in the case. This requirement is consistent with Rule 145(d) which mandates that no further legal action may be taken by the party until payment of costs or upon leave of court. TEX.R.CIV.P. 145(d). In its written order, the trial court found that Uresti was able to afford costs.

On April 26, 2010, Uresti filed a motion for reconsideration, in which he challenged the ability of the judges to file a contest, and attached an exhibit reflecting that his household was eligible for food stamps for the period of March through June of 2010. According to the clerk's record, the motion was set for hearing on May 11, 2010. There is no reporter's record of a hearing on that date. On May 10, Uresti filed a second affidavit of indigence. This document offered no explanation as to why it was filed one day before the scheduled hearing on the motion

for reconsideration.

Against this backdrop, we consider Uresti's specific complaints. Issue 9 asks whether Gaines' conduct in filing a contest on behalf of the judges violated his rights. We overrule Issue 9 because Uresti did not object at the initial hearing and failed to pursue a hearing on his motion for reconsideration. TEX.R.APP.P. 33.1 (before a complaint can be a prerequisite for appellate review, the record must show that (1) the complaint was raised before the trial court by timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," (2) complied with the requirements of the rules of procedure or evidence, and (3) that the trial court ruled or refused to rule on the request). This is consistent with the core principle underlying error-preservation requirements -- the trial court should be given the opportunity to correct potential errors before the case proceeds on appeal. *See, e.g. In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). "[O]ur civil rules of procedure and our decisions thereunder require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment." *Id.* In Issues 10 and 11, Uresti complains that his rights were violated when Judge Berchelmann presided at the hearing on the contest when he was a party to the contest. We overrule both of these issues for the same reason -- Uresti lodged no objection. TEX.R.APP.P. 33.1.

Issues 12 and 50 opine that if Judge Berchelmann "illegally entered the contest" as a co-movant, he was constitutionally disqualified and the order is "Null, Void and Moot and/or voidable" as a result. Nothing in the record before us demonstrates that Judge Berchelmann was a co-movant. The contest filed by Gaines stated that it was filed by "[t]he District Judge Presiding, on behalf of the Judges and the other officers which are entitled or may be entitled to

fees or costs of Court." We have combed the record and can find no evidence that Judge Berchelmann is, was, or may be entitled to court costs and Uresti points us to none. We overrule Issues 12 and 50. Issue 16 is a restatement of the previous issues, asking whether "various judges violate[d] Appellant's rights by presiding over the Appellant's case after having been co-Movants in the Contest to the Appellant's Affidavit of Indigence?" He does not identify the other various judges nor does he direct us to evidence that any judge was entitled to court costs. For these reasons, we overrule Issue 16.

Issue 45 contends that:

After an illegal Contest against the Appellant's Affidavit of Indigence was entered and granted by the Co-Movant Judges, a second Affidavit of indigence was filed by the Appellant which was never contested. Did the Court err when it dismissed the Appellant's case when there was no contest against Appellant's Second Affidavit of Indigence, nor a ruling on whether or not the Appellant could proceed forma pauperus [sic]?

In Issue 51, he restates his complaint to argue that "after Judge Berchelmann entered his illegal and Tampered Order, was not his Order also Moot as the result of the filing Second Affidavit of Inability [sic]?" In short, Uresti maintains that because no contest to the second affidavit was filed, he was entitled to proceed as an indigent from the date of filing forward. We reject this argument for four reasons.

First, the Rules of Appellate Procedure, unlike the Rules of Civil Procedure, contain a deadline for filling a contest to an affidavit of indigence. TEX.R.APP.P. 20.1(e) (contest must be filed on or before the date set by the clerk if the affidavit was filed in the appellate court, or within ten days after the date the affidavit was filed if it was filed in the trial court). The mere filing of the second affidavit did not absolve Uresti from pursuing his motion for reconsideration which was scheduled for hearing the very next day. Apparently, he chose not to do so.

Secondly, the Rules of Civil Procedure envision that the affidavit will be filed with the original petition. TEX.R.CIV.P. 145 (a); *Baughman v. Baughman*, 65 S.W.3d 309, 312 (Tex.App.--Waco 2001, pet. denied). Third, the Rules of Civil Procedure do not contemplate the sequential or successive filing of affidavits of indigence. We can envision the tribulation and turmoil trial courts would endure if a party, whom a trial court had already found not to be indigent, engaged in the filing of repetitive motions. Fourth, since there was no specific deadline for filing a contest, one could be filed up until the date of the next regularly scheduled hearing. TEX.R.CIV.R. 145(d)(if the court finds at the first regular hearing that the party is able to afford costs, the party must pay them). The next regular hearing was scheduled for May 11 and the subject was Uresti's motion for reconsideration. For whatever reason, and it was Uresti's responsibility to secure a hearing, it did not take place. For these reasons, we overrule Issues 45 and 51.

Finally in Issue 46, Uresti complains that Judge Martha Tanner failed to recognize that while Appellant was confined in jail, he was obviously without financial resources and therefore his second affidavit of indigence was facially valid. We reiterate that it was filed on May 10. The case was set for a jury trial on May 17 and was dismissed on that day (1) because Uresti failed to appear, and (2) because he had failed to pay court costs as previously ordered. Throughout his brief, Uresti insists that he failed to appear because he was in jail.[5] The record does contain a child support contempt criminal release order which provides that a hearing was held on May 27, that Uresti appeared by jail video and by attorney. The order recites:

    1. An Arrest Warrant/Commitment Order/Capias was issued against Uresti on March 22;

---

[5] In his brief, Uresti alleges that he "was arrested in presiding court when he appeared on his motion to reverse the judges [sic] ruling's [sic] to deny his Affidavit of Inability to pay Court Cost." He provides no record reference. That hearing was scheduled for May 11.

2. It was executed on or about May 11; and

3. Uresti had been confined in the Bexar County Jail for 28 days.

There are obvious internal inconsistencies in this order. If Uresti had been in jail for 28 days, he would have been taken into custody at least by May 1. Yet he filed his *pro se* second affidavit of indigence on May 10. That affidavit was signed and notarized on May 7. More troublesome is that the release order affirmatively states that Uresti was represented by counsel. His second affidavit averred that he had no legal representation. In his brief, Uresti claims that he was represented by a public defender. His record reference relates to the release order itself which reflects legal representation but no designation of whether counsel was court-appointed or retained. Thus, this document does not establish the facial validity of his indigence. We overrule Issue 46.

### DISMISSAL FOR WANT OF PROSECUTION

Finally, in Issues 34, 45, 46, 52, 53, and 54, Uresti challenges the trial court's dismissal of his motion to modify for want of prosecution. He directs us to opinions from the 8th Circuit Court of Appeals, which are not binding on this court, as well as two United States Supreme Court cases holding *pro se* litigants to less stringent standards than formal pleadings drafted by lawyers. *See Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982), *citing Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1982). His reliance is misplaced, however, because these opinions only address whether a *pro se* inmate adequately stated a federal cause of action for mistreatment during incarceration. They have no bearing on the challenges Uresti brings in this court.

Our review is guided by Rule 38.1(i), which requires that an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and

to the record." TEX.R.APP.P. 38.1(i). Although appellate courts liberally construe briefs by *pro se* litigants, we must hold them to the same standards as licensed attorneys and require them to comply with all applicable laws and rules of procedure. *Stewart v. El Paso County Sheriff's Department*, 324 S.W.3d 321, 323 (Tex.App.--El Paso 2010, pet. denied), *citing Sterner v. Marathon Oil Company*, 767 S.W.2d 686, 690 (Tex. 1989). When a party fails to cite to the record or to legal authority in their brief, nothing is presented for review. *Republic Underwriters Insurance Company v. Mex-Tex, Inc.,* 150 S.W.3d 423, 427 (Tex. 2004); *Stewart*, 324 S.W.3d at 323.

Because Uresti has failed to comply with Rule 38.1(i) of the Texas Rules of Appellate Procedure, we overrule Issues 34, 45, 46, 52, 53, and 54 as inadequately briefed. We pause to note, however, that the dismissal order was valid on the basis of Uresti's failure to pay costs. We do not address his allegation that he was incarcerated and could not appear at trial.[6] The judgment of the trial court is affirmed.

January 25, 2011

Justice

ANN CRAWFORD McCLURE, Chief

Before McClure, C.J., Rivera, and Antcliff, JJ.

---

[6] The record reflects that Uresti did appear by jail video at the conditional release hearing. Litigants cannot be denied access to the courts simply because they are inmates. *In re Z.L.T.*, 124 S.W.3d 163,165 (Tex. 2003), *citing Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). But an inmate does not have an absolute right to appear in person in every court proceeding. *Z.L.T.,* 124 S.W.3d at 165, *citing Zuniga v. Zuniga,* 13 S.W.3d 798, 801 (Tex.App.--San Antonio 1999, no writ). The inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity. *See Jones v. Jones,* 64 S.W.3d 206, 210 (Tex.App.--El Paso 2001, no pet.). As the Supreme Court articulated in *Z.L.T.,* it is the incarcerated inmate who bears the burden to demonstrate why his appearance is necessary. There, the inmate filed a request for a bench warrant, yet the court found that he failed to make the requisite showing that his presence was necessary. *Z.L.T.*, 124 S.W.3d at 166. Consequently, the trial court was not required, on its own, to seek the necessary information. *Id.* Here, there is nothing in the record to suggest Uresti sought a bench warrant or other alternative means, such as video conferencing, by which to participate in either the hearing on the motion for reconsideration or the jury trial itself. *Jones,* 64 S.W.3d at 210-11.