Opinion issued March 12, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00816-CV

————————————

**RETAKA ROMEO NELSON, Appellant**

**V.**

**SHANNON BROCHETTE NELSON, Appellee**

———

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-04063**

———

## MEMORANDUM OPINION

Appellant Retaka Romeo Nelson and appellee Shannon Brochette Nelson each sought a divorce from the other. A week before trial, the court struck Retaka's jury demand and his pleadings. After a bench trial conducted over Retaka's

objection, the court granted the divorce on grounds of cruelty and appointed Shannon sole managing conservator and Retaka possessory conservator of the couple's two young children. On appeal, Retaka contends that the trial court erred by striking his jury demand and his pleadings.

We affirm.

## Background

Shannon and Retaka were married in 1999. Shannon was a pharmacist. Retaka worked as a computer consultant, and he earned a pharmacy degree in 2011. The next year he filed an original petition for divorce, pro se, alleging insupportability as his sole ground. Shannon filed a counter-petition approximately two weeks later.

Shannon and Retaka had two children, who were three and six years old at the time of the divorce filings. Retaka did not request sole or joint managing conservatorship of his children. Instead his petition stated:

> **5. Custody, Visitation, and Child Support**
> My spouse and I agree to make an agreement about custody, visitation, and support. If we cannot make an agreement, I want the court to make decisions on these issues that are best for our children.

Shannon sought sole managing conservatorship, alleging that joint managing conservatorship would not be in the children's best interest. She further alleged that Retaka had a history of family violence and of neglecting the children. She

2

sought supervised visitation and other orders to "protect the safety and well-being of the children."

In conjunction with the filing of his original petition for divorce, Retaka also filed an affidavit of inability to pay costs, which was contested by the district clerk. After a hearing the trial court sustained the contest, finding that Retaka was "able to pay all filing fees, or to give security therefore." Retaka later filed a jury demand and paid the fee.

The trial court appointed an amicus attorney, and it ordered the parents to pay $1,000 each as security for the amicus attorney's fees. Shannon paid, but Retaka did not. Instead—and despite the earlier finding that he was not indigent— he filed an affidavit of inability to pay amicus attorney fees.

At a pretrial hearing, the trial court warned Retaka: "You understand that if you don't pay the amicus timely then at some time I can strike your pleadings, and if you have any type of request for jury trial, I can strike your jury trial motion. Are you aware of that, sir?" Retaka said, "Yes, sir." Later in the hearing, the court announced that trial was set for June 11 and reiterated his warning to Retaka: "In the event that the amicus is not paid, pleadings will be struck and the jury request will be struck."

At a subsequent hearing, the amicus attorney sought additional attorney's fees based on approximately 47 hours of work. Although Shannon's attorney asked

the court to exercise its inherent power to strike Retaka's jury demand due to his failure to pay court-ordered amicus attorney fees, the court deferred a decision on the matter until the time of trial. The court confirmed its prior order that each party pay $1,000 and increased it by a total of $8,000 as security for already incurred amicus attorney fees. The court ordered Retaka to pay $6,600 and Shannon to pay a total of $3,400. Both parents indicated that they lacked the resources to make the lump-sum payments, and the amicus attorney indicated that she would be willing to work out a payment plan with them.

After Retaka failed to pay the amicus attorney by the trial court's deadline, Shannon filed an amended motion for sanctions based on his litigation conduct, some of which she characterized "frivolous," "groundless," and "harassing." She also filed a motion to strike Retaka's jury demand. Among other things, the motion identified Retaka's failure to pay the court-ordered amicus attorney fees as grounds for imposing sanctions. At the pretrial hearing held the same day, both Shannon's attorney and the amicus attorney argued in favor of striking Retaka's jury demand for failure to pay court-ordered fees and based on the behavior alleged in the motion for sanctions. Shannon's attorney also asked the court to strike Retaka's pleadings based on his "abuse of the system." After hearing arguments from the parties, the court struck both Retaka's jury demand and pleadings. However, the court repeatedly invited Retaka to participate at trial.

4

At trial, Shannon testified that in January 2012, Retaka took the children away for three months, without telling her where they were or allowing her access to them. He enrolled the older child in three schools in three months before withdrawing her from school altogether. Shannon testified that the children lived with Retaka in shelters and slept "on church pews and cots." Both children suffered emotional and behavioral disturbances as a result of their time away from their mother. The older child feared being taken by Retaka and required therapy to address her anxiety.

Shannon said the children did not want to see their father. During supervised visitations he failed to follow rules by interrogating the children, and he failed to provide them with food during longer visits. Shannon testified that Retaka had a pharmacy internship in California and that she believed he intended to move there. She feared that he would take the children to California and again deprive her of access to them.

Throughout the marriage, Shannon was the primary caregiver for the children and her mother—not Retaka—was the secondary caregiver. She was also the primary financial support for the family. When Retaka earned money, he considered it his own and used it for personal items, like a two-seat sportscar he purchased when she was pregnant with their second child.

Shannon described her marriage to Retaka as tumultuous and testified that he had a mercurial personality, alternating between charming and threatening. She testified that Retaka had committed acts of domestic violence against her and at times there were periods of "daily abuse." Retaka suffered from anxiety, depression, and rage, which could be well-controlled by medication, but he rarely took it. Retaka disrespected Shannon, insulted her in front of the children, and encouraged them to disrespect her and to choose sides when they argued.

Retaka refused to put on evidence at trial, in part because he believed the nonjury proceeding violated his right to a jury trial. He made numerous repeated objections on this ground, all of which were overruled. He presented no witnesses and no evidence.

After the bench trial, the court awarded sole managing conservatorship to Shannon. Retaka appealed.

## Analysis

On appeal, Retaka brings two issues. He challenges the trial court's order striking his jury demand and his pleadings.

### I. Jury demand

We first consider Retaka's contention that the court erred by denying him a trial by jury. We review a court's denial of the right to a jury trial under an abuse of discretion standard. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664,

666 (Tex. 1996); *Sims v. Fitzpatrick*, 288 S.W.3d 93, 102 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We consider the entire record and will find an abuse of discretion only when the trial court's decision was arbitrary, unreasonable, and without reference to guiding principles. *Mercedez-Benz Credit*, 925 S.W.2d at 666; *Sims*, 288 S.W.3d at 102.

The Texas Constitution guarantees that the right to a trial by jury "shall remain inviolate." TEX. CONST. art. I, § 15; *see also id.* art. V, § 10. The right to a jury trial has a widely acknowledged "sacred place in English and American history." *White v. White*, 108 Tex. 570, 196 S.W. 508, 512 (1917); *see In re Reiter*, 404 S.W.3d 607, 609 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding); *see also Taylor v. Taylor*, 63 S.W.3d 93, 98–101 (Tex. App.—Waco 2001, no pet.). The Texas Constitution also authorizes the Legislature to "pass such laws as may be needed to regulate" the right to a jury trial and "to maintain its purity and efficiency." TEX. CONST. art. I, § 15. To invoke the right to a jury trial, a party must make a written request for a jury, pay the jury fee or file an oath of inability to pay, and do so within a reasonable time before the date set for trial of the case. *See* TEX. R. CIV. P. 216; *see also* TEX. CONST. art. V, § 10.

In a suit affecting the parent-child relationship, a party may demand a jury trial except in two circumstances which do not apply to this case. *See* TEX. FAM. CODE § 105.002. However the statute specifically prohibits the court from

submitting to the jury questions on the issues of child support, terms or conditions of possession or access to the child, or "any right or duty of a conservator, other than the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child." *Id.* § 105.002(c)(2).

Here, it is undisputed that Retaka made a written request for a jury and paid the fee within a reasonable time before the first trial setting in this case. Shannon concedes that the court's striking of Retaka's jury demand was error. In light of the parties' agreement that the trial court erred by striking Retaka's jury demand, we will focus our inquiry on whether any such error was harmful.

"The wrongful denial of a jury trial is harmful when the case contains a question of material fact." *Caldwell v. Barnes*, 154 S.W.3d 93, 98 (Tex. 2004); *accord Mercedes-Benz Credit*, 925 S.W.2d at 667. Stated another way, a trial court's "refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991) (per curiam) (citing *Olson v. Tex. Comm. Bank*, 715 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)). The question then is whether there are disputed fact issues in this case upon which a jury could pass. *See Weng Enters., Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 222 (Tex. App.—Houston [1st Dist.] 1992, no writ).

Shannon argues that the error was harmless; she contends that there were no disputed questions of material fact because Retaka stated in his petition that the parties "agree to try to make an agreement about custody, visitation, and support," and that if they were unable to agree, "I want the court to make decisions on these issues that are best for our children." Shannon also argues that the error in denying him a jury trial was harmless because he submitted no proposed verdict or jury questions, and he presented no evidence at trial.

Retaka's request for the court to decide issues of custody, visitation, and child support did not necessarily imply that there were no material questions of fact. Rather, it was a request for the judge, not a jury, to be the factfinder on those matters. Shannon's argument hinges on the question of whether the phrasing of the petition constituted a waiver of his jury demand. Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Considering the entirety of the record, we do not find that Retaka waived his right to a jury trial. He filed his jury demand and paid the fee almost nine months after he first filed for divorce.

Retaka argues that there were fact questions because reasonable jurors could have found that Shannon did not overcome the presumption of joint managing

9

conservatorship.[1] *See* TEX. FAM. CODE § 153.131. But he presented no evidence at trial, instead relying entirely on his objection to the proceeding taking place without a jury.[2] Shannon testified that approximately one month before trial, Retaka sent her an email saying that he did not wish to continue prosecuting the divorce, that he was willing to agree to terms of a divorce, and that he was willing to consider relinquishing his parental rights. In addition, a fax transmitted to Shannon's attorney was admitted into evidence. In it, Retaka stated that he was "no longer interested in pursuing this divorce . . . [and] fighting for custody, neither visitation."

The trial court appointed Shannon sole managing conservator of the children. In determining conservatorship issues, the best interest of the children is the trial court's primary consideration. TEX. FAM. CODE § 153.002. In doing so, a

---

[1] Retaka also argued that reasonable jurors could have disbelieved Shannon's evidence of cruelty. The court's rendition of divorce on the fault grounds of cruelty would be relevant in this proceeding if Retaka were complaining about a disproportionate award of the marital estate. *See, e.g.*, *Newberry v. Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.). On appeal he does not challenge the division of the marital estate, and nothing in the record indicates that the division of the estate was in fact disproportionate. In addition, he put forth no evidence to controvert Shannon's evidence of physical and emotional abuse and cruelty. Accordingly, any error in denying a jury trial as to the grounds for divorce was harmless.

[2] Retaka also made an argument about the appointment of the judge who presided over the trial and the location of the trial, but he assigns no error with respect to those issues on appeal.

court may consider relevant factors such as a parent's ability to provide a safe, stable, and nonviolent environment for the children, to meet their needs and act in their best interests, and to help the children maintain family relationships. *See Lenz v. Lenz*, 79 S.W.3d 10, 16–17 (Tex. 2002).

Shannon presented substantial evidence to establish that sole managing conservatorship was in the best interest of the children. She testified about her ability to care for the children and provide for them financially. She also testified about Retaka's history of domestic violence, unresolved psychological problems, and an incident in which he hid the children from her for three months, during which time they slept in shelters and moved frequently. Shannon also testified that Retaka intended to move to California, creating a risk of instability for the children. Finally, she testified about Retaka's communication the month before trial in which he indicated he no longer wished to pursue custody of the children and would consider relinquishing his parental rights. Retaka did not rebut any of this evidence; he presented no evidence at all. Because the evidence supported appointment of Shannon as sole managing conservator, and no evidence controverted that outcome or supported appointment of Retaka as a joint managing conservator, there were no material fact questions for a jury to decide. *See Olson*, 715 S.W.2d at 767–68 (finding denial of jury trial would have been harmless when appellants presented no evidence in their own defense at trial).

In light of the evidence presented by Shannon, and because Retaka provided no controverting evidence, the trial court would have been justified in rendering a directed verdict appointing Shannon sole managing conservator even if the trial had been to a jury. As such, we hold that any error in denying Retaka a jury trial was harmless. *See Halsell*, 810 S.W.2d at 372; *Olson*, 715 S.W.2d at 767–68.

## II.    Pleadings

Retaka additonally argues that the trial court erred by striking his pleadings. He contends that he did not have sufficient notice of Shannon's motion for sanctions, which was filed on the morning of the hearing. He also contends that striking his pleadings was an improper sanction because it was disproportionate, there was no nexus between his alleged actions and the penalty, and it was not the minimum effective sanction. He also argues that the court erred by failing to explain its reasoning for the sanction.

We review a trial court's imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *accord Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion by imposing sanctions without reference to guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Nath*, 446 S.W.3d at 361; *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). We will not find an

abuse of discretion in the imposition of sanctions if some evidence supports the trial court's decision. *Nath*, 446 S.W.3d at 361.

A sanction must comply with due process: it must be just and not excessive. *Id.*; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "A just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender." *Nath*, 446 S.W.3d at 363 (citing *TransAmerican*, 811 S.W.2d at 917). A sanction must not be excessive—that is, the "punishment" should "fit the crime" and the sanction should be no more severe than necessary to satisfy its legitimate purposes, like securing compliance with rules of procedure, punishing rule violators, and deterring future misconduct. *Id.* A trial court ordinarily must consider and test lesser sanctions that would promote compliance with the rules. *See id.* (citing *TransAmerican*, 811 S.W.2d at 917).

"Texas courts have the inherent power to sanction for an abuse of the judicial process that may not be covered by any specific rule or statute." *Island Entm't v. Castaneda*, 882 S.W.2d 2, 5 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *accord Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl., L.P.*, 226 S.W.3d 514, 524 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Harmouch v. Michael A. Rassner, D.D.S., P.C.*, No. 01-10-00367-CV, 2011 WL 1435008, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 14, 2011, no pet.) (mem.

13

op.); *see also In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam). "Inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *Houtex Ready Mix Concrete*, 226 S.W.3d at 24. "Bad faith is more than bad judgment or negligence." *Benavides v. Knapp Chevrolet, Inc.*, No. 01-08-00212-CV, 2009 WL 349813, at *4 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op.). A showing of bad faith requires evidence of the conscious doing of wrong for a dishonest, discriminatory, or malicious purpose. *Id.*; *accord Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied). "When a trial court imposes sanctions under its inherent power, it should make specific findings to support its conclusion that the conduct complained of significantly interfered with its legitimate exercise of its core functions." *Harmouch*, 2011 WL 1435008, at *3 (citing *Houtex*, 226 S.W.3d at 524). "These core functions include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments." *In re Texas Dep't of Family & Protective Servs.*, 415 S.W.3d 522, 529 (Tex. App.—Houston [1st Dist.] 2013, [mand. denied]); *Island Entm't, Inc.*, 882 S.W.2d at 5.

In this case, the trial court imposed a sanction orally from the bench; there is no signed order specifying a particular rule used to sanction Retaka. The divorce

decree refers to Retaka as "petitioner" in some places and thus does not reflect the striking of his pleadings. However, as the court clearly indicated that Retaka's pleadings were struck, the trial court's inherent power appears to be the source of authority for its sanction. *See Houtex Ready Mix Concrete*, 226 S.W.3d at 524.

In a suit affecting the parent-child relationship like the divorce in this case, a trial court may appoint an amicus attorney if it "finds that the appointment is necessary to ensure the determination of the best interest of the child." TEX. FAM. CODE § 107.021. A court may not, however, require an amicus attorney "serve without reasonable compensation" for services rendered. *Id.* There is, therefore, no question that the court was authorized to appoint an amicus attorney and to make orders requiring the parties to compensate her for her services.

Retaka contends on appeal that he had no notice that the court would consider striking his pleadings as a sanction for failure to pay the amicus fees. Although Shannon's motion for sanctions was filed the day of the hearing, the record shows that the court twice warned Retaka that if he failed to pay the amicus attorney fees as ordered, it could strike his pleadings. Twice Retaka indicated that he understood. Therefore, we conclude that he had notice that this sanction could be imposed.

Retaka also argues throughout his brief that he is indigent and that there was no challenge to his affidavit of indigency. The record does not support this

contention. A party who is unable to afford costs may file an affidavit in lieu of paying or giving security for an original action. TEX. R. CIV. P. 145. Upon the filing of an affidavit of indigency, "the clerk must docket the action, issue citation and provide such other customary services as are provided any party." *Id.* An affidavit of indigency may be contested, but if it is not contested, indigency is established as a matter of law. *See id.* In this case, Retaka's initial affidavit of indigency was successfully contested, and the court found that he was able to pay costs. Retaka subsequently filed additional affidavits of inability to pay the amicus attorney fees, a procedure not contemplated by the Rules of Civil Procedure. *See In re Velez-Uresti*, 361 S.W.3d 200, 206 (Tex. App.—El Paso 2012, pet. denied). Retaka contends that because his successive filings were not challenged, he was indigent as a matter of law. Yet he provides no authority—and we find none—for the proposition that indigency is established as a matter of law by the filing of an affidavit of inability to pay amicus fees after a court already has sustained a contest to an affidavit of indigency. The court found that Retaka was not indigent, and he did not challenge that finding on appeal. Accordingly, we conclude that he was not indigent.

Retaka argues that there was no connection between his alleged actions and the penalty imposed. However, the 18-month course of pretrial litigation showed that Retaka's courtroom conduct lengthened the proceedings. As the court

16

explained to Retaka, striking his pleadings would position him as the respondent, not the petitioner, and allow him to present his case, but only after Shannon presented her case first. This bears a connection to the wrong in that it was an attempt to regulate the length of trial and the amount of amicus attorney fees incurred.

Retaka also argues that striking his pleadings was a disproportionate sanction, and he suggests that the court could have imposed a less severe sanction such as limiting his filings or requiring the payment of fees and expenses associated with responding to his filings. The trial court waited until the week before trial to impose this sanction. Limiting his filings at that point would not have "fit the crime." In addition, he had demonstrated that ordering him to pay fees would be ineffective as the sanction was imposed due to his failure to pay court-ordered amicus attorney fees.

Retaka additionally argues that striking his pleadings was not the minimum effective sanction that the court could have imposed. He suggests lesser sanctions such as striking evidence and pleadings concerning his allegations about Shannon's fault. He also argues that his actions did not justify a presumption that his claims or defenses lack merit. Ordinarily, when a trial court strikes a party's pleadings as a sanction, it is considered a death-penalty sanction because it results in either dismissal of a plaintiff's claims or a default judgment against a

wrongdoing defendant. *E.g.*, *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012) (default); *Cire*, 134 S.W.3d at 841 (dismissal). Thus, the striking of a party's pleadings will, in most cases, deprive the party of a decision on the merits. Therefore, for death-penalty sanctions to be just, ordinarily there must be a determination that the wrongdoing party's actions justify a presumption that his claims or defenses lack merit. *See Cire*, 134 S.W.3d at 841; *TransAmerican*, 811 S.W.2d at 918; *Salomon v. Lesay*, 369 S.W.3d 540, 557–58 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

But that reasoning does not apply in this case, in which Retaka did not plead for any specific relief other than a no-fault divorce, and when Shannon's cross-petition for divorce meant that the issues of conservatorship, custody, and visitation remained pending before the court. Retaka's suggestion—that a lesser available sanction may have been the striking of evidence and his pleadings pertaining to Shannon's alleged wrongdoing—would have been no sanction at all because he did not allege that Shannon committed any wrongful acts. His pleading asked for no more than a simple no-fault divorce, he did not seek any particular form of conservatorship of his children, and he asked the court to resolve any question of fact and make any appropriate order if he and Shannon could not reach an agreement. The trial court repeatedly invited Retaka to participate at trial, and

18

he refused to do so. But he was not prevented from doing so by the striking of his pleadings.

Having considered the entirety of the record, we conclude that there was some evidence to support the court's action in striking Retaka's pleadings as a sanction under its inherent power to sanction. We further conclude that under the circumstances presented by this case, striking Retaka's pleadings was just and not excessive.

## Conclusion

We overrule all of Retaka's issues, and we affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.